All right, Ms. Carlisle, before you begin, I want to express the court's appreciation for your service in accepting the appointment in this case. Thank you, Your Honor. With that, you may proceed when you're ready. May it please the court. In a sworn statement in support of her 2255 petition, Barbara Carnahan says she asked her lawyer to appeal for her and he refused to do it. In another sworn statement presented by the government, her lawyer says she never asked him to. Presented with those two conflicting statements, the judge nonetheless refused to have a hearing, instead crediting the lawyer over Ms. Carnahan and denying her relief. Counsel, let me ask you about that. Was there any relevant evidence before the court other than the two affidavits? Well, the government argues that there was. I don't think so, so I was kind of about to get there. So the general rule, of course, is if that's the relevant evidence, then you get a hearing. The government tries to carve out an exception in this case because it says that there was more here. The first instance that the government suggests is that when Ms. Carnahan said that she – when the judge said I could file an appeal, I said that's what I want to do, is contradicted by the fact that she didn't say that in open court. Well, of course, this court reviews pro se pleadings, which is what Ms. Carnahan was proceeding on in district court, liberally. And if you read that sentence in her statement with the two sentences afterwards, it's clear that she's referring not necessarily to something she said in open court, but to a conversation she had with her lawyer because she says immediately afterwards, I said that's what I wanted to do. He, my lawyer, told me, Ms. Carnahan, go do your 10 years. You got a good deal. Goodbye. Be happy. So I think in context that it's certainly not the case that she said specifically, I said this in open court, and the record doesn't reflect that. The second instance that the government cites is that before she was sentenced, she said to the court, I'm sorry, and I'm ready to serve my sentence. Well, of course, she hadn't been sentenced yet. She didn't have a right to appeal at that point. She had 10 days after she was sentenced to decide whether she wanted to appeal. So, again, that doesn't contradict her statement, once I was sentenced, I told my lawyer I wanted to appeal. She said that by way of allocution, presumably in an attempt to get a lesser sentence. So that certainly isn't contradictory either. So those are the main things that the government suggests are in the record that might play on, might allow the judge to make this decision. Then the government suggests that Ms. Carnahan's statement was less specific than that of the lawyer. And, again, you have to read Ms. Carnahan's statement liberally, but she said quite specifically, I told my lawyer that's what I want to do, here's what he said to me. The lawyer just said she agreed that she didn't want to appeal, and she never asked me to appeal after that. I don't think there's really any difference there between the specificity of the two affidavits. And this is a situation where the conflict just can't be resolved on the papers. I noticed that the government cited Sanders, and it looks like I didn't discuss it in my reply, so let me just say for a minute that Sanders, of course, doesn't involve the question of whether a lawyer was asked to appeal. It concerns whether Sanders would have pled guilty if he was properly advised. And the court noted that if he'd been properly advised, he'd have been told he'd get more time than he says his lawyer told him he would get, and said, well, we think based on that that there's no reason to think he would have pled guilty. It's really kind of apples and oranges. I suppose it does stand for the principle that sometimes there's enough evidence in the record to preclude a hearing. But here, basically what we have is Ms. Carnahan saying this is what I said, the lawyer saying that's not what you said, and the judge just needs to look both of them in the eye and then make a decision on credibility, and I think Ms. Carnahan is entitled to that. So I'd ask this court to remand and order the judge conduct a hearing. I have plenty of time, so. Mr. Hurst. May it please the court. Ben Hurst for the United States. This court has never held that there is a per se right to an evidentiary hearing for every prisoner who claims that his attorney should have appealed when he requested him to appeal and, in fact, the attorney didn't appeal. In fact, the court has carved out an area where the district court can exercise its discretion to determine whether the move-ins petition is inherently incredible or self-contradictory or, in fact, affirmatively refuted by the record. And that's what the district court did here. The district court exercised its discretion. It made a determination that the move-ins papers themselves were inherently incredible and were, in fact, refuted by the record. And I'll note for the court that the record was developed in front of the same judge who heard the move-ins 2255. So this is the same judge who saw her at the change of plea hearing and the same judge that saw her at the sentencing. And I think that's important for a couple of reasons. First, there were two statements that the main statement that the move-in has claimed to have made, I think, needs to be considered fully in context because what the move-in actually said was, when the judge said I could file an appeal, I said that's what I wanted to do. And I think that the claim that that was made after the hearing is not consistent with her use of the term when there. What she's saying is that's what happened when the judge said I could appeal, and this is a thing that happened at the sentencing hearing. Counsel, it seems to me there is a difference between an illogical affidavit, which this might be characterized as, and an inherently incredible affidavit. On what basis do you find the affidavit to be inherently incredible? I think the district court found several different grounds, and I think those are the right ones. For example, the move-in says in her affidavit, I was never informed that there was a mandatory minimum, when, in fact, the record reflects that Judge Sachs affirmatively told her at the change of plea hearing that there was a mandatory minimum. This is just affirmatively refuted by the record. If this isn't affirmatively refuted by the record, it's hard to imagine what we'd come forward with. The suggestion that that doesn't cut it leads us down the path of a per se rule, where everybody who files a 2255 motion and says that their attorney didn't appeal and that they were requested to automatically gets an evidentiary hearing and gets in front of a district court judge. What about opposing counsel's argument that there were conversations off the record, so that the record itself doesn't necessarily refute the affidavit because it may not tell the full story? That could be, Your Honor. I don't think that's the way I read it. I don't think that's the most plausible way to read that. But it's not the only thing that she said that's affirmatively refuted by the record. She also says that her attorney, it's hard to imagine this is true, but she says that her attorney told her not to produce some disks of child pornography that she found to the officials. In fact, the sentencing transcript, both her attorney at the time and the attorney for the government go on at length about the fact that she did turn those disks over as a reason for the court to accept the 11C1C plea agreement for an amount of time, in fact, that was one-third of the smallest range of the guidelines. The guidelines in this case would have been 360 to life. And she pled guilty to a binding plea agreement for 10 years. And the basis for getting the district court to accept that by both parties was her assistance in providing those documents to the government. So I would say that it's true the court's question. Maybe that's ambiguous how that could be read. I think the more plausible way to read it is the way that the district court did. But there are also other statements in here. And I'll say one more thing about that, Your Honor. The scenario was this. The district court was explaining to the move-in, you may not have the, if you've reserved the right to appeal, you have that right. You can, and he was explaining her appeal rights to her. And then immediately after that, if it really took place off the record, if it took place sort of as a sidebar or something, it's strange that the immediate next thing out of her attorney's mouth is, thank you, Your Honor. And the next thing that appears on the record is her saying, thank you, Your Honor. If, in fact, at that point she told him that she wanted him to appeal, it's strange that she turned around and told the court immediately thereafter, thank you, Your Honor, instead of saying, well, wait, my attorney, I asked him to do something that he didn't do. So, you know, for those reasons, I think, well, I'll make one other point before I sit down, Your Honor, which is that the statement about, Your Honor, I'm sorry, and I'm ready to serve my sentence certainly appears, maybe that's part of her attempt at allocution. But it also reflects a state of mind of hers that only, well, having sentenced a lot of people, I would give absolutely no credibility to that, personally. I mean, you always say, I mean, attorneys always tell their client, get up, tell the judge you're sorry, tell him you're ready to accept the consequences, tell him you're going to be a better person, and, you know, those are platitudes that every attorney tells their client they should say in an allocution. I mean, that to me is, well, I said what I said. It just has no, I wouldn't give any weight to that, personally. I'll make one final point before I sit down. My colleague states that, well, Sanders in its discussion of inherently incredible self-contradictory statements, statements that are affirmatively refuted by the record, well, that's not a decision that deals with the notice of appeal cases. And my response to that would be, well, that's true, but to go down that road is to take us into a place where every prisoner who makes a claim, even claims like this one where the claims are just not entitled to an evidentiary hearing and is going to get to see a seat in front of a district judge. And I think that the district court recognized that problem, didn't abuse its discretion in finding that that's going to create incoherent post-trial practice. And for that reason, the United States would ask the court to affirm. All right. Ms. Carlisle, you have almost six minutes. Use it wisely. So what do you say to the argument that as to this one issue, there's dueling affidavits and therefore your argument is, well, then the court has to have a hearing. But if the dueling statements are in the context of an affidavit that otherwise makes just totally incredible statements and that the judge knows are not true, can they then discount the dueling nature of this one statement? Well, first of all, I'm not quite sure. I mean, her affidavit does say I wasn't informed about the mandatory minimum. The court record says it did. She, of course, didn't have the court record in front of her at the time. So, yeah, the judge said that's certainly not what happened. If that's what she remembers, it's what she remembers. It doesn't make her a liar. Okay. So the question here is when she said I asked my lawyer to appeal and he didn't, is she a liar? And I think she's entitled to a hearing on that. And I don't think that the fact that there may have been other things she said, again, based on her memory, means that she's a liar about that. So I really don't think that that is enough to make the general rule about affidavits go away. I mean, there are lots of cases that don't get hearings and that will continue not to get hearings if Ms. Carnahan gets one. I don't think we really are heading down anything like a slippery slope here. Counsel, wasn't there another, maybe I'm wrong about this, but I've written down that there was another statement that she made where she alleged that her attorney didn't bring up sentencing, a mitigating factor of her help in ending child pornography activity. But the transcript clearly shows that the attorney brought that up and it was discussed in open court. Can you use it? If there's something else, if there's something in the statement that's just clearly wrong, clearly incorrect, the court knows it's incorrect, like that, can that be the factor that tips the balance? Well, I suppose it could. But I'm really not sure that's what happened. Looking at her, what happened in this case was that she got 10 years and the U.S. attorney said, well, I considered requesting a 5K because of her cooperation and decided not to do it. So when she says I received no credit for this cooperation, that's actually not incorrect. In fact, he said, I'm not going to make a cooperation motion. She also says that her lawyer told her to throw those discs away, and we don't know whether that's true or not. But you're right, he did mention at sentencing, but essentially the prosecutor said, yeah, that happened, but I'm not going to give her credit for it. So when she says I didn't get credit for it, again, that's incorrect. I think the issue here has to do with the specific exchange about the right to appeal, and the Supreme Court has very recently told us that the right to appeal is real important in Garza v. Idaho, that even if you have an appeal waiver like Ms. Carnahan did, if counsel doesn't appeal when he's asked to do so, then there's a presumption of prejudice. So I think that the conflict about that is sufficient to have a hearing about that. The judge could say this is the only issue I'm having a hearing about. It's not going to be a real complicated hearing. But I think here that's not refuted by the record, and Ms. Carnahan's entitled to a hearing. So we'd ask the court to reverse. Thank you. Thank you very much. Thank you for your argument. The case is submitted. You may stand aside.